**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────

DANIEL-LEE GERKEN,

                              Plaintiff,

          v.                                              No. 1:24-CV-00435
                                                          (MAD/CFH)
THOMAS GORDON, et al.,


                              Defendants.
───────────────────────────────

**APPEARANCES:**

Daniel-Lee Gerken
4 Winter Haven
West Sand Lake, New York 12196
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


### REPORT-RECOMMENDATION AND ORDER

#### I. In Forma Pauperis

Plaintiff pro se Daniel-Lee Gerken ("plaintiff") commenced this action on March 28, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."); see also Dkt. No. 1. In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[1]

---

[1] Plaintiff is advised that although he has been granted IFP status, like all plaintiffs receiving IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law. . . .

---

[2] These requirements apply equally to non-prisoner pro se litigants. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A when an application to proceed in forma pauperis is filed.").

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine

whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction . . . and (3) a demand for the relief sought . . . ." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for

those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint[3]

Plaintiff claims that "Jaquelin Devorak used perjurious and fraudulent petitions in Rensselaer County Family Court starting November 6, 2022[,] to establish orders of protection to lead her to temporary sole custody," which enabled her "to conspire with the County of Rensselaer, Thomas Gordon, Erin Scott, Nancy Harding, and New York State Child Support Processing Center to establish an Income Withholding Order against [him]" on March 23, 2023, "without [his] express consent or full disclosure of the nature of and cause of the actions against him as well as the jurisdictional nullity of the proceedings[.]" Dkt. No. 1-2 at 2.[4]

Plaintiff alleges that he "was summoned by the Child Support Magistrate, [Thomas Gordon,] around 11:00AM March 23, 2023[,] and coerced under duress to agree to a temporary child support order in an administrative court not disclosed to [him]." Compl. at 4. "The terms of the child support contract as well as paternity contract signed at the hospital under duress were not fully disclosed at inception or at birth of the child." Id. On "August 28, 2023[, plaintiff's] private assets in [his] bank accounts had liens put on them and were frozen by the NYS Child Support Processing Center and [the] County of Rensselaer." Id. "On September 28, [2023, his] bank was

---

[3] Plaintiff submitted various documents as exhibits or attachments to his complaint. See Dkt. Nos. 1-1, 1-2, 1-3, 1-4. These exhibits have also been reviewed by the undersigned in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).
[4] Citations are to the pagination generated by CM/ECF, located in the header of each page.

deducted $1368.00 for 'child support' illegally."  Id.  On November 27, 2023, his

"objections and request for equitable subrogation were ignored by Magistrate Thomas

Gordon who was acting as a private actor in a judicial manner."  Id.

Plaintiff complains that Ms. Devorak, Support Magistrate Gordon, Ms. Scott, Ms.

Harding, the County of Rensselaer, and the New York State Child Support Processing

Center "have issued Income Withholding Orders, Bank Liens, duress and threats

of arrest to enforce the tacit consent and seizing of property and assets including wages

and private assets of [p]laintiff under the fraud of 'CHILD SUPPORT.'"  Dkt. No. 1-2 at 1.

"This was accomplished via the RENSSELAER COUNTY FAMILY COURT Child

Support system, its Magistrate THOMAS GORDON, Chief Clerk ERIN SCOTT and

other private actors working under the fraudulent cloak of de facto and administrative

government," including Ms. Harding, who was the attorney for the child.  Id.; see Compl.

at 7.  "These CHILD SUPPORT proceedings fall under Administrative Process and are

non Judicial."  Dkt. No. 1-2 at 1.  Support Magistrate Gordon "ignored the equitable

subrogation notices, jurisdictional questions, writ of QUO WARRANTO, Rebuttals,

Objections and other defenses of [p]laintiff in the Family Court Child Support

Proceedings," but he "did not disclose that he had no judicial power and these

proceedings were Non-Judicial in law and instead executive with express consent and

full disclosure needed."  Id. at 1-2.  Plaintiff alleges that defendants "deprived the

Plaintiff of his 4th, 5th, and 6th Amendment Rights as a living man and American State

National under color of law."  Dkt. No. 1-2 at 2.

Plaintiff requests "this Court to immediately order that the Rensselaer County

Family Court and NYS Child Support Processing Center drop any and all order against

[him] as well as reimburse any and all monetary payments, garnishments or any other transactions [he] completed with the agency or it's [sic] third party affiliates[.]"  Compl. at 5.  Plaintiff "would also like the court to award damages of $1,000,000.00 as an aggregate payout between each Defendant in order to deter the fraudulent use of the State and County Child Support System."  Id.  Plaintiff also contends that "Mr. Thomas Gordon should be removed as private actor and magistrate immediately for violations of [federal laws,] as well as Ms. Erin Scott and Nancy Harding."  Dkt. No. 1-2 at 7-8.

### C. Analysis

Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985[5] against (1) the New York State Child Support Processing Center; (2) Thomas Gordon, Child Support Magistrate; (3) Erin Scott, Chief Clerk of the Rensselaer Family Court; (4) Jaquelin Devorak, the mother of the child; (5) Nancy Harding, the attorney for the child; and (6) Rensselaer County.  See generally Compl.; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

### 1. Rooker-Feldman

---

[5] Plaintiff also vaguely cites to other laws within his complaint, including Fed. R. Civ. Pro. 60(b)(3), N.Y. C.P.L.R. 5015, 5 U.S.C. § 556D, 18 U.S.C. §§ 242, 1589; however, many of these assertions are indecipherable and, thus, it is unclear plaintiff's reasoning for citing them or how such laws support any kind of claim for relief.  See Compl. at 3; see also Dkt. No. 1-1 at 1; Dkt. No. 1-2 at 1, 2, 8.

"Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment." Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024); see Dorce v. City of New York, 2 F.4th 82, 101 (2d Cir. 2021) ("The Rooker-Feldman doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.") (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." Sims v. Kaufman, No. 23-CV-7927 (LTS), 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024) (citing Legister v. Radowitz, No. 1:20-CV-9330 (LLS), 2020 WL 7405672, at *3 (S.D.N.Y. Dec. 16, 2020) ("A plaintiff's challenge in a federal district court to the validity or enforcement of [a] child support order itself is barred by the Rooker-Feldman doctrine.")).

The doctrine applies if: "(1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff requests the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the proceedings commenced in the district court." DeMeo v. Kean, 754 F. Supp. 2d 435, 448 (N.D.N.Y. 2010) (citing V.S. v. Muhammad, 595 F.3d 426, 430 (2d Cir. 2010)); see also Fernandez v. Turetsky, No. 12-CV-4092

(SLT/MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases and noting that "[c]ourts have repeatedly invoked the [Rooker-Feldman] doctrine in cases . . . in which plaintiffs challenge family court decrees setting child support arrears"), aff'd, 645 F. App'x 103 (2d Cir. 2016) (summary order).

Here, although many of plaintiff's assertions are indecipherable, liberally read, the crux of his complaint expressly asks this Court to review and reverse a child support order that the Rensselaer County Family Court, through Support Magistrate Gordon, issued. See Compl. at 5. Notably, plaintiff "lost" in state court, complains of injuries caused the state court judgment caused, and asks this Court to invalidate the state court's judgments regarding child support. See generally id. "Under the Rooker-Feldman doctrine, this Court may not do so." Fernandez, 2014 WL 5823116, at *4; see, e.g., Phillips v. Wagner, No. 1:22-CV-0833 (DNH/ML), 2022 WL 17406092 (N.D.N.Y. Nov. 4, 2022) ("[The p]laintiff's claims, while not entirely clear, seem to challenge an order by the Family Court, issued before [the p]laintiff filed this action, in which the Family Court determined that he owes child support. . . . Thus, [the p]laintiff's claims for relief are barred by the Rooker-Feldman doctrine, and I recommend that they be dismissed for lack of subject-matter jurisdiction"), report and recommendation adopted, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), appeal dismissed, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023); Walker v. O'Connor, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022), report and recommendation adopted, 2022 WL 2805462 (N.D.N.Y. July 18, 2022).

In the event that plaintiff's underlying state family court proceeding is currently pending, his request for this Court's involvement would implicate the Younger

abstention doctrine.  See Younger v. Harris, 401 U.S. 37 (1971); see also Walker v. O'Connor, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022), report and recommendation adopted, 2022 WL 2805462 (N.D.N.Y. July 18, 2022).  Under the Younger doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."  Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002); see Cogswell v. Rodriguez, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the Younger abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support") (citation omitted).  "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process."  Bowman v. Morris, No. 8:19-CV-97 (BKS/DJS), 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019), report and recommendation adopted, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019).

Thus, it is recommended that plaintiff's complaint be dismissed without prejudice[6] for lack of subject matter jurisdiction under either Rooker-Feldman or Younger. However, due to these doctrines barring such claims from proceeding, it is recommended that an opportunity to amend not be afforded as no better pleading can cure the lack of subject matter jurisdiction.

"[T]here is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed."  Dees v. Zurlo, No. 1:24-CV-1 (MAD/DJS), 2024 WL 2291701, at *13 (N.D.N.Y. May 21, 2024) (citing, inter alia,

---

[6] A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case.'"  McKie v. Kornegay, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) (summary order) (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54-55 (2d Cir. 2016)).

Curtis v. Greenberg, No. 22-252-CV, 2023 WL 6324324, *2, n.3 (2d Cir. Sept. 29, 2023)).  However, with thoroughness in mind, the undersigned reviews several additional or alternate grounds for dismissal.

### 2. Domestic Relations Abstention

The Supreme Court has

> [l]ong ago observed that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. So strong is our deference to state law in this area that we have recognized a domestic relations exception that divests the federal courts of power to issue divorce, alimony, and child custody decrees.

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12-13 (2004) (internal quotation Marks and citations omitted), abrogated on other grounds by Lexmark Int'l Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014); see also Ex parte Burrus, 136 U.S. 586, 593-94 (1890) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."); United States v. Windsor, 570 U.S. 744, 766 (2013) ("State laws defining and regulating marriage, of course, must respect the constitutional rights of persons; but, subject to those guarantees, regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States.") (internal quotation marks and citations omitted); Bowman v. Morris, No. 8:19-CV-97 (BKS/DJS), 2019 WL 5150196, at *5 (N.D.N.Y. Apr. 10, 2019) ("Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child [support] remain outside federal court jurisdiction.") (citing Marshall v. Marshall, 547 U.S. 293, 308 (2006)), report and recommendation adopted, 2019 WL 3759174 (N.D.N.Y. Aug. 9,

2019).  Under "the domestic relations abstention doctrine[,] . . . a federal court [may] decline to exercise jurisdiction where claims are 'on the verge of being matrimonial in nature' and 'there is no obstacle to their full and fair determination in state courts.'" Ortiz v. Tinnerello, No. 3:20-CV-1782(KAD), 2021 WL 11593793, at *4 (D. Conn. Jan. 20, 2021) (quoting Deem v. DiMella-Deem, 941 F.3d 618, 623 (2d Cir. 2019)); see Bey v. Furman, No. 21-CV-4090 (WFK/RER), 2021 WL 3725987, at *4 (E.D.N.Y. Aug. 23, 2021) (indicating that the plaintiff challenging his duty to pay child support was "matrimonial in nature").

In addition to recommending dismissal for the reasons detailed above, the undersigned observes that courts in this circuit routinely dismiss actions for lack of subject matter jurisdiction, due to the domestic relations abstention doctrine, where the plaintiff is seeking review of child support proceedings.  See, e.g., McArthur v. Bell, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (dismissing section 1983 action for lack of subject matter jurisdiction even where the plaintiff did not seek "to alter the state court's child support modification determination" for merely deciding the constitutional allegations would require the court "to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings"); Neustein v. Orbach, 732 F. Supp. 333, 339-40 (E.D.N.Y. 1990) (holding that the Court lacked jurisdiction because it could not resolve factual disputes connected to domestic relations); Dudley v. Hochul, No. 5:24-CV-0048 (DNH/ML), 2024 WL 1906594, at *5 (N.D.N.Y. May 1, 2024) (same), report and recommendation adopted sub nom. Dudley v. Hocul, 2024 WL 2399913 (N.D.N.Y. May 23, 2024); Pynn v. Pynn, No. 24-CV-508 (LJV), 2024 WL 3647783, at *8 (W.D.N.Y. Aug. 5, 2024) (collecting cases and noting that "[c]ourts in this circuit have

found abstention appropriate when the plaintiff asked a federal court to review and overturn state court rulings related to child custody[,] divorce[, and child support]"); Rotondo v. New York, No. 5:17-CV-1065 (GLS/DEP), 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) ("In this case, it is manifestly clear that [the] plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction.  [The p]laintiff challenges a state-court's determination denying him relief from a family court's child support order, and [the] plaintiff's requests for relief include removal of the family court proceeding to federal court."), report and recommendation adopted, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017); Davis v. Kushner, No. 1:14-CV-00511 (MAD), 2014 WL 5308142, at *4 (N.D.N.Y. Oct. 16, 2014) (recommending dismissal of the plaintiff's claim as barred by the domestic relations exception where the plaintiff sought "monetary damages for an unfavorable family court ruling that was allegedly motivated by his religious affiliation").

Here, as discussed, "plaintiff challenges the enforcement of his child support obligations."  Sekou Camera v. N.Y.C. Dep't of Soc. Servs., No. 24-CV-5886 (AMD/TAM), 2024 WL 4107256, at *2 (E.D.N.Y. Sept. 5, 2024) ("The doctrine of domestic relations abstention means that this Court does not have jurisdiction over the plaintiff's claims."); see generally Compl.  Plaintiff vaguely asserts that the New York State Child Support Processing Center, Support Magistrate Gordon, Ms. Scott, Ms. Devorak, Ms. Harding, and Rensselaer County conspired against him to violate his constitutional rights; however, "conclusory statements accusing the state court of violating the Constitution without more do not establish an obstacle to . . . full and fair determination" in state courts.  Evans v. Adams, No. 22-CV-3882 (KAM/JRC), 2024 WL

306240, at *4 (E.D.N.Y. Jan. 26, 2024); see Chapman v. Maycock, No. 21-CV-4940 (KAM/JRC), 2021 WL 6091749, at *4 (E.D.N.Y. Dec. 23, 2021) (holding that "conclusory statements alleging family court's disregard of the Constitution, or joint activity or conspiracy between [the d]efendant and family court referees, without more, [we]re not sufficient to show that [the plaintiff's] claims [we]re not capable of being resolved fairly in state court") (citation omitted).

Thus, if the District Judge disagrees with the Rooker-Feldman and Younger analyses, supra, it is alternatively recommended that plaintiff's complaint be dismissed without prejudice for lack of subject matter jurisdiction under the domestic relations abstention doctrine. See Remy v. New York State Dep't of Tax. & Fin., 507 F. App'x 16, 18-19 (2d Cir. 2013) (summary order) (dismissing complaint that sought "direct review" of child support order in state family court); see also Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.")).

### 3. Immunities

### a. Sovereign Immunity

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Off. of Child.

14

& Fam. Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)); see Garcia v. Paylock, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.").  "This jurisdictional bar applies regardless of the nature of the relief sought."  Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); see Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 30-32 (2d Cir. 1991)); see also Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing Pennhurst State School & Hosp., 465 U.S. at 99-102).  The New York State Child Support Processing Center, which appears to be a branch of the New York State Department of Social

Services,[7] would be an arm of the state for purposes of sovereign immunity.  See Calderon v. N.Y.C. Dep't of Homeless Servs., No. 24-CV-4631 (VEC), 2024 WL 3429884, at *2 (S.D.N.Y. July 16, 2024) ("[A]s an agency of the State of New York, the New York State Department of Social Services is an arm of the State and is protected by Eleventh Amendment immunity."); see also Dixon v. Jordan, No. 23-CV-9227 (LTS), 2024 WL 37096, at *2 (S.D.N.Y. Jan. 2, 2024) ("Plaintiff's Section 1983 claims against the New York State Child Support Services are therefore barred by the Eleventh Amendment").

New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaint.  See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)); see also Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) ("It is well-established that New York has not consented to § 1983 lawsuits in federal court[.]").  Moreover, Congress has not abrogated New York's sovereign immunity in enacting § 1983.  See Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977); see also Mayo v. Doe, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) ("Section 1983 does not abrogate state sovereign immunity") (citing Quern v. Jordan, 440 U.S. 332, 342 (1979)).  Therefore, plaintiff's § 1983 claims

---

[7] The New York State Child Support Processing Center appears to be a collection agency that the New York State Department of Social Services operates to collect child support payments.  See Sector Enters., Inc. v. DiPalermo, 779 F. Supp. 236, 238 (N.D.N.Y. 1991) ("[The New York State Department of Social Services] operates the New York State Child Support Management System ('CSMS').  CSMS is an elaborate, computerized 'management information system' which is designed to, inter alia, assist state and local social service agencies in obtaining federal reimbursement for payments they make for child support.").

against the New York State Child Support Processing Center are barred under the Eleventh Amendment.

The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." Griffith v. New York State, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 (N.D.N.Y. Mar. 20, 2024) (citing Crumble v. United States, 23-CV-4427 (LTS), 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023), and Nguyen v. Kijakazi, 20-CV-0607 (MKB), 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022)), report and recommendation adopted, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024); see Wang v. Delphin-Rittmon, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("[S]overeign immunity strips the court of jurisdiction[.]") (citing Smith v. Scalia, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), aff'd, 2015 WL 13710107 (D.C. Cir. 2015)). Thus, it is recommended that plaintiff's claims against the New York State Child Support Processing Center be dismissed without prejudice[8] for lack of subject matter jurisdiction. See Abadi v. City of New York, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction . . . the amended complaint should be dismissed without prejudice.") (citing Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")).

### b. Judicial Immunity

Plaintiff names Support Magistrate Gordon as a defendant in this action. See generally Compl. "With minor exceptions, judges are entitled to absolute immunity for

---

[8] It is recommended, however, the dismissal be without opportunity to amend.

actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA). "Family Court Support Magistrates, as New York State judicial officers, enjoy [ ] judicial immunity, when presiding over child support proceedings." Cora v. Wright, No. 1:24-CV-0263 (LTS), 2024 WL 450247, at *2 (S.D.N.Y. Feb. 5, 2024); see Dieujuste v. Sin, No. 23-CV-7805, 2024 WL 1825403, at *5 (E.D.N.Y. Apr. 26, 2024) ("As a Support Magistrate presiding over child support proceedings, Judge Sin is unquestionably entitled to judicial immunity."), reconsideration denied, 2024 WL 2308693 (E.D.N.Y. May 22, 2024).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly,

and the asserted immunity will only be overcome when the judge clearly lacks

jurisdiction over the subject matter.'"  Pacherille v. Burns, 30 F. Supp. 3d 159, 163

(N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d

Cir. 2011) (summary order)).  "Whether a judge acted in a judicial capacity depends on

the nature of the act [complained of] itself, i.e., whether it is a function normally

performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt

with the judge in his judicial capacity."  Ceparano, 404 F. App'x at 539 (internal

quotation marks and citation omitted).  "Further, if the judge is performing in his judicial

capacity," he "'will not be deprived of immunity because the action he took was in error,

was done maliciously, or was in excess of his authority; rather, he will be subject to

liability only when he has acted in the clear absence of all jurisdiction.'"  Ceparano, 404

F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)).  "Judges are

not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not

taken in the judge's judicial capacity.'"  Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009)

(quoting Mireles, 502 U.S. at 11).

Plaintiff contends that Support Magistrate Gordon "defraud[ed]" him, "seize[d]

property," and "deprive[d him] of rights and due process using duress, coercion and

threat of arrest."  Compl. at 4.  Specifically, plaintiff argues that Support Magistrate

Gordon "ignored the equitable subrogation notices, jurisdictional questions, writ of QUO

WARRANTO, Rebuttals, Objections and other defenses of [p]laintiff in the Family Court

Child Support Proceedings[.]"  Dkt. No. 1-2 at 1-2.  Plaintiff further complains that

Support Magistrate Gordon "did not disclose that he had no judicial power" as he is a

"private actor," and did not disclose that the child support "proceedings were Non-

Judicial in law and instead executive with express consent and full disclosure needed." Id. at 2; Compl. at 4.

Liberally construing his complaint, plaintiff appears to argue that Support Magistrate Gordon "acted . . . outside the bounds of [his] authority" during plaintiff's child support proceedings. Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *5 (N.D.N.Y. Oct. 3, 2023), report and recommendation adopted, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023). However, "[t]he scope of the judge's jurisdiction must be construed broadly, such that a court acts in the absence of all jurisdiction only when it does not have any statutory or constitutional power to adjudicate the case." Dickerson v. Siegal, No. 23-CV-3859 (EK/LB), 2023 WL 6158833, at *3 (E.D.N.Y. Sept. 21, 2023) (citations and internal quotation marks omitted). Even when accepting plaintiff's allegations as true, he has not adequately alleged that Support Magistrate Gordon acted in the "complete absence of all jurisdiction." Pacherille, 30 F. Supp. 3d at 163; see Olszyk v. Thorne, No. 3:20-CV-0445 (TJM/ML), 2020 WL 5634328, at *5 (N.D.N.Y. June 17, 2020) ("The Complaint is devoid of facts plausibly suggesting that Defendant [Judge] Barrasse acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendant Barrasse be dismissed in their entirety based on the doctrine of absolute judicial immunity."), report and recommendation adopted, 2020 WL 5633791 (N.D.N.Y. Sept. 21, 2020).

Notably, although plaintiff argues that Support Magistrate Gordon was a "private actor" with "no judicial power," it is clear that Support Magistrates act in a judicial capacity when presiding over child support proceedings. Compl. at 4; Dkt. No. 1-2 at 2; see, e.g., Chris H. v. New York, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order)

(explaining that New York Family Court Support Magistrates act in a judicial capacity when presiding over child support hearings); <u>Miller v. Primo</u>, No. 5:23-CV-1051 (BKS/ML), 2023 WL 6379325, at *6 (N.D.N.Y. Sept. 29, 2023) (explaining that the actions of New York Family Court Support Magistrates were judicial in nature when they "assess[ed] and collect[ed] child support that [the p]laintiff owe[d] pursuant to Family Court orders and judgments"), <u>report and recommendation adopted</u>, 2023 WL 7545323 (N.D.N.Y. Nov. 14, 2023); <u>Remy v. NYS Dep't of Tax'n & Fin.</u>, No. 09-CV-4444 (SJF/AKT), 2010 WL 3925184, at *14 (E.D.N.Y. Aug. 18, 2010) ("[The p]laintiff's argument that the Support Magistrates are not 'judges' entitled to judicial immunity is incorrect."), <u>report and recommendation adopted</u>, 2010 WL 3926919 (E.D.N.Y. Sept. 29, 2010), <u>aff'd</u>, 507 F. App'x 16 (2d Cir. 2013) (summary order); <u>Lomtevas v. Cardozo</u>, No. 05-CV-2779 (DLI/LB), 2006 WL 229908, at *5 (E.D.N.Y. Jan. 31, 2006) (rejecting the plaintiff's "contention that a support magistrate is not a 'judge'" because, "[a]s a support magistrate in the Family Court, [the defendant's] actions were the same as those of a judge[; h]er decisions were both judicial in nature and subject to review").

Thus, as plaintiff's claims against Support Magistrate Gordon concern conduct taken in his capacity as a child support magistrate, he is immune from suit pursuant to the doctrine of judicial immunity.  <u>See</u> <u>Shtrauch v. Dowd</u>, 651 F. App'x 72, 73-74 (2d Cir. 2016) (summary order) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature'") (quoting <u>Bliven</u>, 579 F.3d at 210); <u>see also</u> <u>Cora v. Wright</u>, No. 1:24-CV-0263 (LTS), 2024 WL 450247, at *3 (S.D.N.Y. Feb. 5, 2024) ("Because [the p]laintiff sues Support Magistrate Wright for acts arising out of, or related to, individual cases before [her], the doctrine of judicial immunity

applies to [the p]laintiff's claims under Section 1983 against her.") (internal quotation marks and citations omitted).  To the extent plaintiff seeks to bring an action against Support Magistrate Gordon in his official capacity, the suit is barred by the Eleventh Amendment.  See Pacherille, 30 F. Supp. 3d at 163 n.5 ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities."); see also Trello v. McKeighan, 624 F. Supp. 3d 150, 155-56 (N.D.N.Y. 2022).   The doctrine of judicial immunity shields judges from suit to the extent they are sued in their individual capacities.  See Kellogg v. Nichols, 703 F. Supp. 3d 367, 372 (N.D.N.Y. 2023) (citing Trello v. McKeighan, 624 F. Supp. 3d 150, 155 (N.D.N.Y. 2022)).

Accordingly, the undersigned recommends dismissing the claims against Support Magistrate Gordon in his individual and official capacities as barred by judicial immunity and sovereign immunity.  The undersigned further recommends dismissing the claims against Support Magistrate Gordon without prejudice for lack of subject matter jurisdiction and without opportunity to amend.  See Miller v. Cnty. of Nassau, 467 F. Supp. 2d 308, 312 (E.D.N.Y. 2006) (explaining that a dismissal "based on a finding of judicial immunity" is for lack of subject matter jurisdiction); see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72-73 (1996) (holding that claims barred by the Eleventh Amendment are properly dismissed for lack of subject matter jurisdiction).

### c. Quasi-Judicial Immunity

Plaintiff also seeks to bring claims against Erin Scott, the Chief Clerk of the Rensselaer Family Court.  See Compl. at 2.  "Judicial immunity has been extended to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature which are

essential to the judicial process, especially the filing of court documents and managing a court's calendar." Calley v. Town of Cortlandt, No. 19-CV-5453 (CM), 2019 WL 11880434, at *5 (S.D.N.Y. July 8, 2019) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1985), and citing Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal), and Pikulin v. Gonzales, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out of the filing and docketing of legal documents)). In other words, "[c]ertain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" Gross v. Rell, 695 F.3d 211, 215 (2d Cir. 2012) (quoting Burns v. Reed, 500 U.S. 478, 485 (1991)). Courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are, thus, entitled to absolute immunity. McKnight v. Middleton, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order); see Humphrey v. Court Clerk for the Second Circuit, No. 08-CV-0363 (DNH/DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (explaining that court clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court") (citing Rodriguez, 116 F.3d at 67); see also Argentieri v. Clerk of Ct. for Judge Kmiotek, 420 F. Supp. 2d 162, 165 (W.D.N.Y. 2006) ("Inasmuch as [the] plaintiff claims that [the] defendants violated his rights by refusing to acknowledge his motions or to schedule his court proceedings, [the] defendants were assisting judges in

performing essential judicial functions. As a result, [the] plaintiff's claims are barred by absolute immunity.").

Here, plaintiff argues that Ms. Scott, as the "Chief Clerk," conspired with others to deprive him of his rights.  Dkt. No. 1-2 at 1.  However, plaintiff provides no further details and rests his claim on the fact that Ms. Scott was the Chief Clerk of the Rensselaer Family Court.  See generally Compl.  Thus, plaintiff's allegations are be "based on discretionary acts performed by [Ms. Scott] in [her] official capacit[y] as Court Clerk[.]"  Albritton v. Sullivan, No. 1:22-CV-00900 (MAD/DJS), 2023 WL 3612840, at *1 (N.D.N.Y. May 24, 2023).  Importantly, plaintiff does not allege that Ms. Scott's actions were taken outside of the scope of the functions associated with her position as court clerk.  See Muia v. Mancino, No. 1:21-CV-1323 (GTS/DJS), 2023 WL 2631936, at *6 (N.D.N.Y. Mar. 24, 2023) ("Defendant Mancino is entitled to immunity from suit to the extent the Complaint seeks damages against him in connection with his official duties as Albany City Court Clerk"); see also Carthen v. Gonzalez, No. 19-CV-6392 (BMC/LB), 2020 WL 376569, at *2 (E.D.N.Y. Jan. 23, 2020) ("James Smoot, as the Borough Court Clerk, is entitled to absolute immunity from damages for performance of tasks which are judicial in nature and an integral part of the judicial process.").

It is, therefore, recommended that plaintiff's claims against Ms. Scott be dismissed without prejudice for lack of subject matter jurisdiction under the doctrine of quasi-judicial immunity and without opportunity to amend.  See Kramer v. Dane, No. 17-CV-5253 (JFB/SIL), 2018 WL 5077164, at *11 (E.D.N.Y. July 26, 2018) (dismissing the plaintiff's claim for lack of subject matter jurisdiction based on the quasi-judicial

immunity doctrine), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2018 WL 4489284 (E.D.N.Y.

Sept. 19, 2018).

### 4. 42 U.S.C. § 1983

### a. State Action

Plaintiff further contends that Ms. Devorak and Ms. Harding violated his

constitutional rights.  <u>See</u> Compl. at 3, 7.  However, "[t]o state a claim under § 1983, a

plaintiff must allege the violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was committed by a person

acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  "The traditional

definition of acting under color of state law requires that the defendant . . . exercise[ ]

power possessed by virtue of state law and made possible only because the wrongdoer

is clothed with the authority of state law."  <u>Id.</u> at 49 (internal quotation marks and citation

omitted).  "Because the United States Constitution regulates only the Government, not

private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct

constitutes 'state action.'"  <u>Flagg v. Yonkers Sav. & Loan Ass'n</u>, 396 F.3d 178, 186 (2d

Cir. 2005) (quoting <u>United States v. Int'l Brotherhood of Teamsters</u>, 941 F.2d 1292,

1295 (2d Cir. 1991)); <u>see</u> <u>Baum v. N. Dutchess Hosp.</u>, 764 F. Supp. 2d 410, 419

(N.D.N.Y. 2011) ("State action is an essential element of any § 1983 claim.") (citing

<u>Lugar v. Edmondson Oil Co.</u>, Inc., 457 U.S. 922, 934 (1982) (explaining that the "under

color of any statute" language is to enforce the provisions of the Fourteenth Amendment

and that if a defendant's conduct satisfies the state-action requirement then that

conduct is also action under color of state law under § 1983), and Rounseville v. Zahl, 13 F.3d 625, 627-28 (2d Cir. 1994) (noting the state action requirement for § 1983)).

"Private parties generally are not state actors and therefore are not usually liable under [§] 1983." Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *7 (S.D.N.Y. Aug. 6, 2020) (citing Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013)); see Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (summary order) ("[P]rivate individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law."). "A private party's actions can be considered state action in three situations":

> (1) the private party acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) the private party willfully participates in joint activity with the state or its functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the state has delegated a public function to the private party (the "public function" test).

Rogers v. City of New Rochelle, No. 1:19-CV-0479 (CM), 2019 WL 5538031, at *2 (S.D.N.Y. Oct. 25, 2019) (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012)). "The fundamental question under each test is whether the private party's challenged actions are 'fairly attributable' to the State." Id. (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)). "[A] State normally can be held responsible for a private decision . . . when it has . . . provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (citations omitted). The State's "[m]ere approval of or acquiescence in the initiatives of a private party[, however,] is not sufficient to justify holding the State responsible for those initiatives." Id. at 1004-05.

Here, plaintiff appears to argue that Ms. Devorak did not "disclose" the "terms" of "the child support contract as well as paternity contract" at the time he signed these documents "at the hospital under duress" either "at inception or at birth of the child." Compl. at 4. He also contends that Ms. Devorak conspired with the County of Renssealer, Ms. Scott, Child Support Magistrate Gordon, and the New York State Child Support Processing center to "seize [his] property and assets" and used "perjurious and fraudulent petitions" in Rensselaer County Family Court to obtain orders of protection to "lead her to temporary sole custody" in order for her to conspire with the above-named defendants to "establish an Income Withholding Order" against plaintiff without his consent "or Full Disclosure of the nature and cause of the actions against him as well as the jurisdictional nullity of the proceedings any of the opposing parties." Dkt. No. 1-2 at 1-2.

First, Ms. Devorak is a not a state actor. She is a private party, and the mother of the child connected to the support payments. Thus, she only may be sued pursuant to section 1983 if the above-discussed factors apply. See Rogers, 2019 WL 5538031, at *2. Ms. Harding is the attorney for the child. The Second Circuit has held that attorneys for the child "are not state actors for purposes of suits filed pursuant to § 1983." Milan v. Wetheimer, 808 F.3d 961, 964 (2d Cir. 2015); see also Parent v. New York, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), aff'd, 485 F. Appx. 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent").

Although plaintiff conclusorily alleges that Ms. Devorak "conspire[d] with State Actors to deprive Plaintiff of his rights under the Constitution," dkt. no. 1-2 at 2, plaintiff alleges no facts showing that Ms. Devorak or Ms. Harding acted "using the coercive power of the state or is controlled by the state," "willfully participate[d] in joint activity with the state or . . . [is] entwined with state policies," or that "the state has delegated a public function to [him or her]." Rogers, 2019 WL 5538031, at *2; see Eggsware v. Doe, No. 1:22-CV-54 (BKS/CFH), 2022 WL 827640, at *5 (N.D.N.Y. Feb. 7, 2022) (dismissing the plaintiff's § 1983 claims where "there is nothing in the complaint to suggest that any of the potential wrongful actors are 'state actors' or that they are 'collaborating' with state actors"), report and recommendation adopted, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022).

It is, therefore, recommended that plaintiff's section 1983 claims against Ms. Devorak and Ms. Harding be dismissed. Importantly, because, as the undersigned concluded above, plaintiff's complained of conduct surrounding and relating to the implementation of the child support order and withdrawal of funds cannot serve as a basis for a section 1983 claim for the many reasons stated supra, it is recommended that plaintiff not be provided an opportunity to amend.

### b. Municipal Liability

Plaintiff names Rensselaer County as defendant. See generally Compl. "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'" Dougal, 2023 WL 6430586, at *10 (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012), and citing Monell v. Dep't of Soc. Servs. of

City of N.Y., 436 U.S. 658, 690-91 (1978)).  "Municipalities may only be held liable when

the municipality itself deprives an individual of a constitutional right; it 'may not be held

liable on a theory of respondeat superior.'"  Id. (quoting Jeffes v. Barnes, 208 F.3d 49,

56 (2d Cir. 2000)).  An "official policy or custom" of the municipality can be shown in

several ways:

> (1) a formal policy officially endorsed by the municipality;
> (2) actions taken by government officials responsible for
> establishing municipal policies related to the particular
> deprivation in question; (3) a practice so consistent and
> widespread that it constitutes a "custom or usage" sufficient
> to impute constructive knowledge of the practice to
> policymaking officials; or (4) a failure by policymakers to train
> or supervise subordinates to such an extent that it amounts to
> "deliberate indifference" to the rights of those who come in
> contact with the municipal employees.

Dorsett-Felicelli, Inc. v. Cnty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005)

(citations omitted).  "[M]ere allegations of a municipal custom, a practice of tolerating

official misconduct, or inadequate training and/or supervision are insufficient to

demonstrate the existence of such a custom unless supported by factual details."

Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar.

26, 2015); see Oklahoma City v. Tuttle, 471 U.S. 808, 809 (1985) ("There must at the

very least be an affirmative link between the municipality's policy and the particular

constitutional violation alleged.").

Critically, "a prerequisite to municipal liability under Monell is an underlying

constitutional violation by a state actor."  Henry-Lee v. City of New York, 746 F. Supp.

2d 546, 567 (S.D.N.Y. 2010).  As the Second Circuit has noted, "Monell does not

provide a separate cause of action for the failure by the government to train its

employees; it extends liability to a municipal organization where that organization's

failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell [is] entirely correct"); see Mendes v. Cunningham, No. 3:21-CV-1527 (JAM), 2022 WL 2104515, at *4 (D. Conn. June 10, 2022) ("In any event, I need not consider whether Mendes's allegations satisfy Monell because Mendes has not alleged any plausible underlying constitutional violation").

Plaintiff generally contends that Rensselaer County violated his rights under § 1983. See generally Compl. However, as discussed, plaintiff has failed to state a claim that a person, who is not entitled to absolute immunity, acted under the color of state law when they deprived him of a constitutional right. See discussion supra; see also Mugabo v. Wagner, No. 22-CV-930-A, 2024 WL 1621534, at *4 (W.D.N.Y. Apr. 15, 2024) (citing Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)). Thus, plaintiff has failed to state an underlying constitutional violation sufficient to support a municipal liability claim. See Dees v. Zurlo, No. 1:24-CV-0001 (MAD/DJS), 2024 WL 1053237, at *14 (N.D.N.Y. Mar. 11, 2024) ("A fundamental requirement of a Monell claim is the establishment of an underlying constitutional violation. . . . In the present case the Court is recommending the dismissal of all the federal claims and, as such, also recommends that any Monell claim be likewise dismissed.") (citations omitted), report and recommendation adopted, 2024 WL 2291701 (N.D.N.Y. May 21, 2024); see also Holyoke v. S.S.I., No. 6:23-CV-1557 (MAD/ATB), 2024 WL 20726, at *6 (N.D.N.Y. Jan. 2, 2024) (dismissing the plaintiff's municipal liability claims against the City of Utica and

Oneida County for, inter alia, failing to plausibly allege an underlying constitutional violation), report and recommendation adopted, 2024 WL 689117 (N.D.N.Y. Feb. 20, 2024).

Even if, arguendo, plaintiff had alleged an underlying constitutional violation, he has failed to identify or allege any facts showing the existence of a municipal policy or custom of Rensselaer County which caused his alleged constitutional violations. See Boyde v. New York, No. 5:16-CV-555 (LEK/TWD), 2016 WL 3573133, at *4 (N.D.N.Y. May 19, 2016) (dismissing on § 1915 review the plaintiff's complaint against Onondaga County and the City of Syracuse because the plaintiff "failed to identify or allege any facts showing the existence of a municipal policy or custom . . . which caused his alleged false arrest [and other constitutional violations]"), report and recommendation adopted, 2016 WL 3580768 (N.D.N.Y. June 28, 2016); see also Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023 WL 4424128, at *4 (N.D.N.Y. May 31, 2023) (concluding that the plaintiff's complaint was "insufficient to allege a claim for municipal liability" because the "[p]laintiff does not state what Schoharie County's alleged policy was or how it negatively impacted [him]").

Plaintiff also has not alleged facts plausibly showing that Rensselaer County failed to properly hire, supervise, and train subordinates in connection with his claims. See Dougal, 2023 WL 6430586, at *10 (dismissing on § 1915 review the plaintiff's complaint against Saratoga County because the plaintiff did "not include any allegations in his complaint concerning municipal conduct that states a Monell claim"); see also Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *7 (N.D.N.Y. Feb. 12, 2018) (collecting cases dismissing Monell claims where the

complaint contains no factual support for the existence of an unconstitutional policy or custom and only conclusory allegations referencing a failure to train), report and recommendation adopted, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), aff'd, 768 F. App'x 66 (2d Cir. 2019) (summary order).  Thus, he has failed to state a municipal liability claim against Rensselaer County.  It is, therefore, recommended that all claims against Rensselaer County be dismissed.  As the undersigned concludes that plaintiff has not, and cannot, demonstrate an underlying constitutional violation in connection with these claims, it is recommended that any Monell claim against Rensselaer County be dismissed without opportunity to amend.

### 5. Conspiracy

Plaintiff also seeks to bring a conspiracy[9] claim, asserting that defendants[10] "illegally conspired to steal the private assets of Plaintiff through tacit consent using."[11] Compl. at 4.  Liberally construed, plaintiff appears to argue that all defendants conspired to "steal" the $1368.00 deducted from his bank account for child support payments.  Id.

To sufficiently allege "a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."

---

[9]  Plaintiff does not specify the statute under which he seeks to bring his conspiracy claim.  See generally Compl.

[10]  The undersigned discussed the conspiracy claims with respect to Ms. Harding and Ms. Devorak, supra.

[11]  The sentence ends here.

Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (citing Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992)).

To state a conspiracy claim under 42 U.S.C. § 1985(3),

> a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "In addition, 'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *6 (N.D.N.Y. Feb. 12, 2018) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)), report and recommendation adopted, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), aff'd, 768 F. App'x 66 (2d Cir. 2019) (summary order).

"The pleading standard for a conspiracy claim is demanding." Rother v. NYS Dep't of Corr. & Cmty. Supervision, 970 F. Supp. 2d 78, 103 (N.D.N.Y. 2013) (citing Kiryas Joel Alliance v. Vill. of Kiryas Joel, 495 F. App'x 183, 190 (2d Cir. 2012) (summary order), and Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999)). "In order to maintain an action under [§] 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks and citations omitted). "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed;

diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Walker v. O'Connor, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at *4 (N.D.N.Y. June 29, 2022) (citation omitted), report and recommendation adopted, 2022 WL 2805462 (N.D.N.Y. July 18, 2022). "Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation." Id. (citing Oliver v. Penny, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (summary order) (concluding that the plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation")). Similarly, "the failure of a plaintiff to show an underlying constitutional violation on which to base a section 1983 conspiracy claim means the conspiracy claims fails as a matter of law." Taylor v. New York Dep't of Corr. Servs., No. 9:10-CV-140 (MAD/RFT), 2012 WL 913678, at *9 (N.D.N.Y. Feb. 23, 2012), report and recommendation adopted sub nom. Taylor v. New York Dep't of Corr., No. 9:10-CV-140 (MAD/RFT), 2012 WL 913564 (N.D.N.Y. Mar. 16, 2012) (citation omitted).

Plaintiff has failed to state a conspiracy pursuant to either 1983 or 1985. As the undersigned has concluded, there is no underlying constitutional violation; thus, the conspiracy claim must fail under both sections 1983 and 1985. See Walker, 2022 WL 2341420, at *4.[12] Accordingly, it is recommended that plaintiff's claims of conspiracy pursuant to either section 1983 or section 1985, be dismissed.

### III. Leave to Amend

---

[12] The undersigned observes the section 1985 claim would further fail because plaintiff sets forth no "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Syfert, 2018 WL 3121611, at *6.

34

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted).  "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'"  Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, the Rooker-Feldman and Younger issues cannot be cured by a better pleading.  In addition, claims against Support Magistrate Gordon are barred by judicial and sovereign immunity, the claims against Erin Scott are barred by quasi-judicial immunity, the claims against Rensselaer County[13] are barred by sovereign immunity immunity, and Ms. Devorak and Ms. Harding are not state actors – all further supporting reasons for why plaintiff's claims could not be cured by a better pleading.  Accordingly, it is recommended that the complaint be dismissed in its entirety without prejudice and without opportunity to amend.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

---

[13]  Although plaintiff could, in theory, add facts in support of policy/custom for a Monell claim against Rensselaer County, because, as detailed within this Report-Recommendation & Order, he has failed to set forth any underlying constitutional violation and cannot do so, he cannot properly plead a Monell claim.

**RECOMMENDED**, that plaintiff's complaint, Dkt. No. 1, be **DISMISSED in its entirety WITHOUT PREJUDICE and without opportunity to amend** for lack of subject matter jurisdiction, and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[14]

Dated:  October 29, 2024
       Albany, New York

                            Christian F. Hummel
                            U.S. Magistrate Judge

---

[14] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).