UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**DANIEL-LEE GERKEN,**

                                **Plaintiff,**

  vs.                                                          1:24-CV-435
                                                                   (MAD/CFH)

**THOMAS GORDON, et al.,**

                                **Defendants.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

DANIEL-LEE GERKEN
West Sand Lake, New York
Plaintiff *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

### I. INTRODUCTION

On March 28, 2024, Plaintiff Daniel-Lee Gerken commenced this action, *pro se*, against Defendants Child Support Magistrate Thomas Gordon, Clerk of the Rensselaer County Family Court Erin Scott, Rensselaer County, Jaqueline Devorak, the mother of Plaintiff's child, Attorney for the Child Nancy Harding, and New York State Child Support Processing Center. *See* Dkt. No. 1. Plaintiff alleges that, pursuant to 42 U.S.C. § 1983, Defendants are conspiring against him to violate his constitutional rights by defrauding him and forcing him to pay child support. *See id.* Plaintiff also submitted an application to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 2.

On October 29, 2024, Magistrate Judge Christian F. Hummel issued a Report-Recommendation and Order granting Plaintiff's IFP motion. *See* Dkt. No. 5. Magistrate Judge Hummel also recommended dismissing Plaintiff's complaint without prejudice and without leave

1

to amend. *See id.* On November 8, 2024, Plaintiff filed objections to the Report-Recommendation and Order. *See* Dkt. Nos. 6, 7.

"Generally, when a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'" *Id.* (quoting N.D.N.Y. L.R. 72.1(c)) (footnote omitted). "When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review." *Id.* at 684 (citations omitted). "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review." *Id.* (footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

As Plaintiff is proceeding *pro se*, the Court must review his complaint under a more lenient standard. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003). The Court must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

2

97, 106 (1976)). "Although the court has the duty to show liberality towards pro se litigants, . . . there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations omitted).

## II.  DISCUSSION

A.     ***Rooker-Feldman*** **Doctrine and Abstention Doctrines**

Magistrate Judge Hummel first discussed the application of the *Rooker-Feldman* doctrine, *Younger* abstention, and domestic relations abstention to subject matter jurisdiction.  *See* Dkt. No. 5 at 8-14.  Magistrate Judge Hummel first noted that Plaintiff appears to be challenging a Rensselaer County Family Court child support order, which cannot be challenged in this Court pursuant to the *Rooker-Feldman* doctrine.  *See id.* at 9.  He next explained that if any state family court proceedings are still ongoing, *Younger* abstention would require the Court to decline to exercise subject matter jurisdiction.  *See id.* at 9-10.  Finally, Magistrate Judge Hummel commented that "courts in this circuit routinely dismiss actions for lack of subject matter jurisdiction, due to the domestic relations abstention doctrine, where the plaintiff is seeking review of child support proceedings."  *Id.* at 12 (quotation omitted).

In his objections, Plaintiff contends that Article 6, Section 2 of the United States Constitution overrules the *Rooker-Feldman* doctrine.  *See* Dkt. No. 6 at 7.  Plaintiff does not address *Younger* or domestic relations abstention.

The Court finds no clear error in Magistrate Judge Hummel's discussion and application of the aforementioned doctrines.  First, "[t]he Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court.'"  *Hunter v. McMahon*, 75 F.4th 62, 67 (2d

Cir. 2023) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "*Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 67-68 (quotation omitted).

    Next, *Younger* demands that

> federal courts [] decline to exercise jurisdiction in three [] exceptional categories of cases: "First, *Younger* preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[ ] abstention. Finally, federal courts [must] refrain[ ] from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 591 U.S. 786 (2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). "*Younger* abstention is [] an 'exception to th[e] general rule' that 'a federal court's obligation to hear and decide a case is virtually unflagging,' . . . and the doctrine is also subject to exceptions of its own in cases of bad faith, harassment, or other 'extraordinary circumstances.'" *Id.* (quotations omitted). "[T]he *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983." *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001).

    The Second Circuit, in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990), explained that "[a]lthough matrimonial actions may ordinarily be instituted in federal court on diversity grounds, the Supreme Court in *Barber v. Barber*, 62 U.S. [582, 584] (1859), went so far as to disclaim all federal subject matter jurisdiction for some classes of matrimonial actions." *Id.* This is known as the domestic relations exception to federal jurisdiction, *i.e.*, federal courts should not exercise jurisdiction over matrimonial actions brought under diversity grounds.

4

"[H]owever, the scope of this matrimonial exception to federal jurisdiction is 'rather narrowly confined,' . . . only 'where a federal court is asked to grant a divorce or annulment, *determine support payments*, or award custody of a child' does it generally decline jurisdiction pursuant to the matrimonial exception." *Id.* (quotations omitted) (emphasis added); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Although the domestic relations '*exception*' to subject matter jurisdiction . . . does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does"). The abstention doctrine has been utilized across the country by federal courts removing themselves from considering a state court domestic relations matter. *See Deem*, 941 F.3d at 623 (collecting cases) (citing, *inter alia*, *DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("[A]bstention by use of a stay may be permissible where a RICO action is directed against concealment or transfer of property that is the very subject of a pending divorce proceeding")).

Here, *Younger* prevents this Court from interfering in ongoing family court matters to the extent that Plaintiff asks this Court to order the Rensselaer County Family Court and New York State Child Support Processing Center to take certain actions. *See* Dkt. No. 1 at 5; *see also Skillings v. City of New York*, No. 21-CV-3034, 2023 WL 8531493, *5 (E.D.N.Y. Jan. 19, 2023); *Dudley v. Hochul*, No. 5:24-CV-0048, 2024 WL 1906594, *5 (N.D.N.Y. May 1, 2024). Additionally, as to Plaintiff's request for monetary damages, "the domestic relations *exception* clearly does not apply to this case because it is 'before this Court on federal question jurisdiction, not diversity.'" *Deem*, 941 F.3d at 623 (quoting *Williams v. Lambert*, 46 F.3d 1275 (2d Cir. 1995)) (emphasis added). However, *abstention* is appropriate because Plaintiffs' complaint concerns family court disputes over child support payments. *See Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, *4 (S.D.N.Y. Feb. 5, 2024).

5

The Court, therefore, adopts this portion of the Order and Report-Recommendation.[1]

**B.    Sovereign Immunity**

Plaintiff seeks to sue the New York State Child Support Processing Center.  *See* Dkt. No. 1.  Magistrate Judge Hummel concluded that Plaintiff cannot sue the entity because it is protected by sovereign immunity as an arm of New York State.  *See* Dkt. No. 5 at 14-17.  Plaintiff argues in his objections that sovereign immunity does not apply because the Child Support Processing Center, along with the other Defendants, are attempting to cover up constitutional violations.  *See* Dkt. No. 6 at 8.

Plaintiff has not presented any legal authority that contradicts Magistrate Judge Hummel's accurate analysis and conclusion concerning the application of sovereign immunity to the New York State Child Support Processing Center.  "[T]he Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'"  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).  "[T]he United States Supreme Court has held that the States, and their agencies, are not 'persons' within the meaning of Section 1983."  *Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (quoting *Will v. Michigan Dep't. of the State Police*, 491 U.S. 58, 71 (1989)).

---

[1] Plaintiff references Article 6, section 2 of the United States Constitution which affirms that the Constitution is the supreme Law of the Land and Plaintiff contends that the Constitution makes New York's common law child support scheme unconstitutional.  *See* Dkt. No. 6 at 7.  The Court will not address the substance of Plaintiff's claims and arguments concerning the validity of the state court child support orders for the reasons set forth in this decision.

Because New York has not waived its sovereign immunity, Magistrate Judge Hummel correctly concluded that Plaintiff's complaint against the New York State Child Support Processing Center, a state entity, is barred by the Eleventh Amendment. *See Grigoli v. 42 U.S.C. §654(3) Child Support Enf't Div.*, No. 18-CV-3672, 2018 WL 2084172, *5 (S.D.N.Y. May 1, 2018); *Skalaban v. Dep't of Child. & Fams.*, 314 F. Supp. 2d 101, 106 (D. Conn. 2004). The Court adopts this portion of Magistrate Judge Hummel's Report-Recommendation and Order.

C. **Absolute Judicial Immunity**

As to Plaintiff naming Support Magistrate Thomas Gordon as a Defendant, Magistrate Judge Hummel concluded that the claims are barred by judicial immunity and sovereign immunity. *See* Dkt. No. 5 at 17-22. Plaintiff argues in his objections that Defendant Gordon "loses [his] judicial immunity" because he has committed treason. Dkt. No. 6 at 9. As to sovereign immunity, Plaintiff contends that the acts underlying his complaint "are an attempt to cover for government officials acting outside their scope of authority" such that sovereign immunity does not apply. *Id.* at 7.

The Court agrees with Magistrate Judge Hummel that judicial and sovereign immunity bar Plaintiff's complaint against Defendant Gordon in his capacity as a Support Magistrate. "Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.'" *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). "Absolute immunity for a judge performing his or her judicial functions is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597

U.S. 1 (2022) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)).  "Entitlement to absolute immunity does not depend on the individual's title or on the office itself. . . ." *Id.* at 124 (citations omitted).  "Judicial acts principally involve adjudication of particularized, existing issues."  *Id.*  "Judicial immunity is overcome in only two circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"  *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, *5 (2d Cir. June 7, 2022) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

      Plaintiff's allegations against Defendant Gordon stem entirely from adjudication of Plaintiff's child support case.  *See* Dkt. No. 1 at 1-2; Dkt. No. 1-3 at 5.  Although Plaintiff disagrees with the Defendant Gordon's decisions, the actions are entirely within the scope of the Support Magistrate's jurisdiction.  Plaintiff has not presented more than conclusory allegations to establish that Defendant Gordon was acting absent all jurisdiction.  Defendant Gordon is, therefore, entitled to absolute immunity.  *See, e.g.*, *King v. New York State*, No. 23-CV-3421, 2023 WL 5625440, *4 (E.D.N.Y. Aug. 31, 2023); *Wilkins v. Soares*, No. 8:20-CV-00116, 2020 WL 5238598, *4 (N.D.N.Y. May 27, 2020); *Viola v. Bryant*, No. 3:17-CV-00853, 2017 WL 2676407, *4 (D. Conn. June 21, 2017); *Topolski v. Wrobleski*, No. 5:13-CV-0872, 2014 WL 2215761, *5 (N.D.N.Y. May 29, 2014).

      Likewise, sovereign immunity protects Defendant Gordon from suit brought against him in his official capacity.  The Second Circuit has recently reaffirmed the application of Eleventh Amendment sovereign immunity to New York State judges.  *See Bythewood v. New York*, No. 22-CV-2542, 2023 WL 6152796, *1 (2d Cir. Sept. 21, 2023) ("We agree with the district court that

[the] claims against the State of New York and the Judicial Defendants are barred by Eleventh Amendment sovereign immunity")).

Therefore, the Court adopts this portion of the Report-Recommendation and Order.

**D.     Quasi-Judicial Immunity**

Magistrate Judge Hummel next reviewed the application of quasi-judicial immunity to Plaintiff's claims brought against Erin Scott, the Chief Clerk of the Rensselaer Family Court. *See* Dkt. No. 5 at 22. The Court finds no clear error in Magistrate Judge Hummel's conclusion that Defendant Scott is entitled to quasi-judicial immunity because the allegations against him relate solely to his function as an officer of the Rensselaer Family Court. *See id.* at 24; *see also Jackson v. Pfau*, 523 Fed. Appx. 736, 737-38 (2d Cir. 2013) (affirming dismissal of Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding that the "defendants were entitled to judicial immunity[] because [the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process"); *Gollomp,* 568 F.3d at 365; *Fishman v. Off. of Ct. Admin. New York State Cts.*, No. 18-CV-282, 2020 WL 1082560, *6 (S.D.N.Y. Mar. 5, 2020), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021).

Additionally, Defendant Nancy Harding, as the attorney for Plaintiff's child is entitled to quasi-judicial immunity. "A private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable' to that of a judge, . . . or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou*, 438 U.S. 478, 513, (1978); citing *Scotto v. Almenas*, 143 F.3d 105, 111012 (2d Cir. 1998); *Dorman v. Higgins*, 821 F.2d 133, 136-38 (2d Cir. 1987)) (additional quotation marks

9

omitted). The Second Circuit has affirmed application of quasi-judicial immunity to a "law guardian and her director." *Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009). This is because law guardians or attorneys for children serve "serve[] as an 'arm of the court,' or act[] as an 'integral part[ ] of the judicial process.'" *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)). Because Defendant Harding was appointed by the court and performed court-related functions, she is also afforded quasi-judicial immunity. *See Cherner v. Westchester Jewish Cmty. Servs., Inc.*, No. 20-CV-8331, 2022 WL 596074, *4 (S.D.N.Y. Feb. 28, 2022), *aff'd*, No. 22-642, 2022 WL 17817882 (2d Cir. Dec. 20, 2022); *Wilson v. Wilson-Polson*, No. 09-CV-9810, 2010 WL 3733935, *7 (S.D.N.Y. Sept. 23, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *Thomas v. Martin-Gibbons*, No. 19-CV-7695, 2020 WL 5026884, *7 (S.D.N.Y. Aug. 25, 2020). If Defendant Harding is not entitled to quasi-judicial immunity, then as explained in the Report-Recommendation and Order and below, she would not be considered a state actor and cannot be sued under § 1983.

**E.     State Action**

As to Ms. Harding and Jaquelin Devorak, the mother of Plaintiff's child, Magistrate Judge Hummel determined that they could not be held liable under § 1983 because they are not state actors. *See* Dkt. No. 5 at 25-28. In his objections, Plaintiff argues that he has sufficiently alleged state action because Defendant Devorak "used the coercive power of the state to effectively put Plaintiff in peonage in order to unjustly enrich herself in this case." Dkt. No. 6 at 9. He also contends that Defendant Harding has used "the state to compel and coerce Plaintiff into a Title VI-D consent contract with the private corporation known of State of New York Child Support."

10

*Id.* at 10.  Plaintiff's objections are conclusory and the Court adopts this portion of Magistrate Judge Hummel's Report-Recommendation and Order.

"'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'"  *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)).  "'A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.'"  *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)).  "'[S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."'"  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (additional quotation omitted).

"'To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'"  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).  "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'"  *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  *Id.*

As to Defendant Devorak, it is well-settled that "'[t]he fact that a private entity uses the state courts does not transform the private party into a state actor.'"  *Rice v. City of New York*, 275

F. Supp. 3d 395, 403-04 (E.D.N.Y. 2017) (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016)); *see also Malave-Sykes v. Endicott Police Dep't*, No. 3:23-CV-1215, 2023 WL 6847684, *5 (N.D.N.Y. Oct. 17, 2023) (quotation omitted) ("[P]roviding false information to the police does not make a private individual a state actor and liable under § 1983'"); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent"); *Milan v. Wertheimer*, 808 F.3d 961, 962-64 (2d Cir. 2015) (affirming dismissal of claims against children's grandmother for initiating protective services investigations because grandmother was not a state actor).  Therefore, her use of the judicial system to obtain child support payments does not make her a state actor.

Assuming Defendant Harding is not entitled to quasi-judicial immunity for the sake of this analysis, she would not be considered a state actor insofar as the Second Circuit has explicitly held "that law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015); *see also Dickerson v. Siegal*, No. 23-CV-3859, 2023 WL 6158833, *4 (E.D.N.Y. Sept. 21, 2023).

Based on the foregoing, the Court finds no clear error in this portion of Magistrate Judge Hummel's Report-Recommendation and Order and adopts it, accordingly.

F.     **Municipal Liability**

Magistrate Judge Hummel next recommended that Plaintiff's claims against Rensselaer County be dismissed because Plaintiff did not sufficiently allege any underlying constitutional violations, nor did he establish any policy or custom which caused a constitutional violation.  *See*

Dkt. No. 5 at 28-32. Plaintiff argues that child support is a Rensselaer County official policy which is being used to deprive Plaintiff of his rights. *See* Dkt. No. 6 at 10-11.

Magistrate Judge Hummel thoroughly set forth the legal background underlying municipal liability, which Plaintiff does not challenge. *See* Dkt. No. 5 at 28-32; *see also* Dkt. No. 6. As to the application of the legal framework, the Court agrees with Magistrate Judge Hummel that Plaintiff has not alleged a surviving underlying constitutional claim nor a county policy or custom.

The argument that child support is a municipal policy has been rejected by numerous courts. *See Sorenson v. Suffolk Cnty. Child Support Enf't Bureau*, No. 07-CV-03755, 2009 WL 580426, *4 (E.D.N.Y. Mar. 5, 2009); *Parent*, 786 F. Supp. 2d at 536; *Cannon v. NYS Comm'r of Soc. Servs.*, No. 19-CV-6493, 2019 WL 3743975, *5 (S.D.N.Y. Aug. 7, 2019); *Bowen v. Gordon*, No. 1:24-CV-114, 2024 WL 2053155, *3 (N.D.N.Y. Feb. 20, 2024); *Grigoli*, 2018 WL 2084172, at *5. Thus, the Court agrees with Magistrate Judge Hummel and dismisses the complaint as against Rensselaer County.

**G.  Conspiracy**

As to Plaintiff's conspiracy claim, Magistrate Judge Hummel also correctly concluded that Plaintiff failed to state a claim. *See* Dkt. No. 5 at 33-34. Magistrate Judge Hummel explained the requirements for stating a conspiracy claim and noted the high burden that pleading such a claim demands. *See id.* The Court finds no clear error in the conclusion that Plaintiff's complaint is too conclusory to support a conspiracy claim particularly where he has failed to allege any underlying constitutional violation. This is because the only named Defendants are immune from suit or are not liable under § 1983. Accordingly, the Court dismisses Plaintiff's conspiracy claim. *See Cruz v. New York*, No. 5:17-CV-00510, 2017 WL 6021838, *20 (N.D.N.Y.

Oct. 27, 2017); *Fariello v. Rodriguez*, 148 F.R.D. 670, 685 (E.D.N.Y. 1993), *aff'd*, 22 F.3d 1090 (2d Cir. 1994); *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 208 (E.D.N.Y. 2010).

H.      **Leave to Amend**

Magistrate Judge Hummel recommended denying Plaintiff leave to amend his complaint because a better pleading cannot cure the deficiencies as outlined in the Report-Recommendation and Order. *See* Dkt. No. 5 at 35.

"'Sua sponte dismissal of *pro se* [] petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by'" the Second Circuit. *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) (quoting *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)). "In the § 1983 context, such dismissals are 'inappropriate' – regardless of the merits – if the complaint alleges that '(1) the defendant was a state actor . . . when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Id.* (quoting *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)). However, courts often dismiss claims barred by immunity without leave to amend because better pleading cannot cure the deficiency, *i.e.*, amending a complaint does not eliminate a party's immunity. *See Clay v. Bishop*, No. 1:22-CV-0983, 2023 WL 3352903, *7 (N.D.N.Y. Feb. 7, 2023) (collecting cases); *Woods v. Vermont*, No. 2:22-CV-00008, 2023 WL 2624352, *2 (D. Vt. Mar. 24, 2023); *Burdick v. Town of Schroeppel*, No. 5:16-CV-01393, 2017 WL 5509355, *9 (N.D.N.Y. Jan. 31, 2017), *aff'd*, 717 Fed. Appx. 92, 93 (2d Cir. 2018). Likewise, a better pleading would not alter the Court's decision as to application of the *Rooker-Feldman*, *Younger*, and domestic relations doctrines because Plaintiff cannot amend his complaint to eliminate the fact that all of his claims stem from past or present state family court matters. *See Sochia v. Herkimer Cnty Child*

*Protective Servs.*, No. 6:24-CV-1068, 2024 WL 4802839, *11 (N.D.N.Y. Nov. 15, 2024); *Dean v. Doberman*, No. 21-CV-8320, 2023 WL 2480012, *10 (S.D.N.Y. Mar. 13, 2023).

Therefore, the Court agrees with Magistrate Judge Hummel and denies Plaintiff leave to amend his complaint.[2]

## IV.  CONCLUSION

After carefully the Plaintiff's submissions, Magistrate Judge Hummel's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 5) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED without prejudice and without leave to amend**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order upon Plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: December 6, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[2] Plaintiff provides the Court with a memorandum from the U.S. Department of Justice. *See* Dkt. No. 7. Nothing in the memorandum alters the Court's conclusions as set forth in this decision.